GREEN, J.
delivered the opinion of the court.
This suit was brought in the circuit court of Fayette county on a bill of exchange drawn by James Hunter on Lawrence & Chalmers of New Orleans in favor of Samuel Hunter, and endorsed by Samuel Hunter, Jno. Hunter, E. W. Tipton, Alexander McNeil and George H. Wyatt, and then negotiated at the Branch of the Planters’ Bank of Tennessee, at Lagrange. The bill was then placed in the hands of Matthew Watson, president of the principal bank, for collection, and by him endorsed to Samuel C. Bell, cashier of the Merchants’ and Traders’ Bank at New Orleans. The bill was presented and protested for non-payment the 27th of February, 1839, of which Bell advised Watson, by letter, immediately, which was received by Watson on the 7th of March. On the same day Watson wrote to Smith, cashier of the Branch Bank at Lagrange, advising him of the protest. This letter was received on the 13th of March: on the 14th Smith placed notices to all the parties in Gloster’s hands to be served. Gloster served Wyatt with notice on the 14th, and McNeil on the 15th of March. The notice served on McNeil was written and signed by Smith, cashier of the Branch Bank at Lagrange, and was not placed in Gloster’s hands by Wyatt, nor did he tell Gloster to notify McNeil in this particular case — but he had before requested Glos-ter to notify all parties to any paper on which he might be, an endorser. Wyatt has paid the bill at the Branch Bank at Lagrange. Upon this state of facts, the two principal questions *127 are, first, whether the Branch Bank at Lagrange was or could be the holder of this bill — and secondly, if so, whether it had a day to give notices, in addition to the day allowed by the parties whose names were on the bill as endorsers? 1. As to the first question: there can be no doubt but that a Branch Bank is the owner and holder of bills purchased, and notes and bills discounted by it. It has a distinct corporate existence by which it may contract for and acquire the ownership of property. The evidence in this case is conclusive that this bill was purchased by the Branch Bank at Lagrange from Wyatt, and transmitted to New Orleans through Matthew Watson, president of the principal bank for collection merely; Watson, therefore, and the Merchants’ and Traders’ Bank at New Orleans were only agents of the Branch Bank at Lagrange, which Branch Bank was the true owner and holder of the bill at the time of its dishonor. This view of the case is supported by the case of Church vs. Barlow, 9 Pick. Rep. 547, where it was determined that “if a note endorsed by the defendants and the plaintiffs and discounted at a bank in Connecticut, was endorsed by the cashier of a bank in New York, where the maker lived, and there a notary sent a notice of non-payment to the cashier of the Connecticut Bank, who immediately sent notices to the defendants and the plaintiffs, and the plaintiffs paid the note at that bank — these facts showed that the Connecticut Bank was the holder of the note at the time of its dishonor, and that the notary was their agent.” Chitty on Bills, 8th ed. app’x 811.
2. It is next to be considered whether the Bank at Lagrange after being notified of the dishonor of the bill by its agent, Watson, was entitled to a day to give notice to the endorsers. We think it was so entitled. It is laid down by Smith on Mercantile Law, p. 149, (15 Law Lib. 89) that “a banker presenting a bill for his customer, has the same time to give notice to his customer, as if he, the banker were the holder for his own benefit, and the customer has the same time as if such had been the case, to transmit the notice to the former parties;” so that in this case Watson had the same time to give the Branch Bank at Lagrange notice as though he had been the holder — and *128 then the Bank at Lagrange had the same time to give notice to Wyatt, the endorser. Therefore the notice to Wyatt was in time, and he was bound to pay the bill.
It is objected that McNeil was not notified by Wyatt, but by the bank. The court left it to the jury, to say from the evidence, whether Gloster, who served the notice, was not Wyatt’s agent as well as the agent of the bank — and if he was, then the notice to McNeil on the 15th, one day after Wyatt re-, ceived notice, was sufficient. We think there is no error in this direction, and that the jury were authorized to find that Glos-ter was Wyatt’s agent. The fact that Wyatt had given him no directions about that particular notice can make no difference. He had received general instructions to give notice in all such cases. This would constitute him an agent in this case as effectually as though he had been instructed as to this case particularly. Judgment affirmed.